NOT FOR PUBLICATION (Doc. No. 7)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
NAUTILUS INSURANCE CO.,            :
:
Plaintiff,                  :
:   Civil No. 10-2164 (RBK/JS)
v.                           :
:   **OPINION**
TRIPLE C CONSTRUCTION, INC.,       :
:
Defendant.                  :
_____:

**KUGLER**, United States District Judge:

Plaintiff Nautilus Insurance Company ("Nautilus") issued Defendant Triple C Construction, Inc. ("Triple C") a general liability insurance policy that does not cover injuries to employees. Triple C was subsequently sued by a worker injured at a worksite. Nautilus brought this action against Triple C seeking a declaratory judgment that it is not obligated under the insurance policy to indemnify or defend Triple C against the injured worker's claims. Nautilus now moves this Court for default judgment because Triple C failed to respond to the Complaint. For the reasons discussed below, the Court grants Nautilus' motion for default judgment.

I.   BACKGROUND

Nautilus issued Triple C a general liability insurance policy that was effective from September 14, 2007 to September 14, 2008 (the "Policy"). (Ex. D to Pl.'s Cmpl.). In April 2010, Vander Teixeira sued Triple C and several other construction companies in the Superior Court of New Jersey. Teixeira alleges that in April 2008, he was "working for 3 Brothers Construction" at a worksite in Brigantine, New Jersey. (Ex. C to Aff. of Robert J. Cosgrove

1

dated July 29, 2010 ("Cosgrove Aff."), ¶ 15).  Triple C contracted with 3 Brothers Construction and other contractors to perform work at the worksite.  According to Teixeira, he was injured when he inadvertently touched the trigger of a pneumatic nail gun, which fired a nail striking him in the stomach and penetrating his abdomen.  Teixeira alleges that Triple C, 3 Brothers Construction, and other contractors were jointly responsible for safety at the worksite.  He claims that they disabled the "contact trip mechanism" on the nail gun and generally failed to provide a safe worksite.  (Id. ¶ 21).  Teixeira claims that all the contractors "acted with intentional, wanton and willful disregard for [his] health, safety, and rights."  (Id. ¶ 31T).  He asserts a negligence claim against Triple C and seeks compensatory and punitive damages.

Triple C sent Nautilus a copy of Teixeira's complaint and requested that Nautilus provide coverage pursuant to the Policy.  Nautilus retained counsel to defend Triple C subject to certain restrictions.  Specifically, Nautilus informed Triple C that it "reserve[d] the right to withdraw from [Triple C's] defense upon appropriate written notification to [Triple C] if [at] any time it becomes apparent that none of the damages being claimed by the plaintiffs are covered by this policy."  (Ex. G to Cosgrove Aff.).  Nautilus subsequently instituted this action against Triple C for a declaratory judgment that it does not have a duty under the Policy to defend or indemnify Triple C regarding Teixeira's negligence claim.

Pursuant to the Policy, Nautilus agreed to the following:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property
> damage" to which this insurance applies.  We will have the right
> and duty to defend the insured against any "suit" seeking those
> damages.  However, we will have no duty to defend the insured
> against any "suit" seeking damages for "bodily injury" or
> "property damage" to which this insurance does not apply.  We
> may, at our discretion, investigate any "occurrence" and settle any
> claim or "suit" that may result.

(Ex. F to Cosgrove Aff., at 13). The Policy further provides:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; . . .

(Id.). The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 26). Nautilus does not deny that Teixeira's injuries occurred within the "coverage territory."[1]

The Policy includes various exclusions and limitations on liability. First, it does not provide coverage if Triple C "expected or intended" the "bodily injury" or "property damage." (Id. at 14). Second, the Policy does not apply "to a person, whether or not an 'employee' of any insured, if benefits for the 'bodily injury' are payable or must be provided under a workers' compensation or disability benefits law or a similar law." (Id. at 19). Third, the Policy does not cover expenses related to "bodily injury" to an "'employee' of any insured arising out of and in the course of . . . employment by any insured . . . or . . . [p]erforming duties related to the conduct of any insured's business." (Id. at 35). The employee-exclusion applies "[w]hether any insured may be liable as an employer or in any other capacity" and "to any obligation so share damages with or repay someone else who must pay damages because of the injury." (Id.). For purposes of the employee-exclusion, the Policy defines "employee" as:

---

[1] Nautilus argues that Teixeira's injuries may have occurred outside the "policy period." This argument is based on an apparent typographical error in Teixeira's complaint. Teixeira alleges that his injuries occurred at the conclusion of his work on April 10, 2008. (See Ex. C to Cosgrove Aff., ¶¶ 15, 17). However, he also alleges that his injuries occurred on April 10, 2009. (Id. at ¶ 18). When the Complaint is read as a whole, it seems clear that Teixeira's injuries occurred in 2008. In any event, the Court need not address this argument by Nautilus because, as discussed below, the Policy clearly excludes claims based on injuries to employees, and Teixeira was an employee as defined by the Policy.

3

> [A]ny person or persons who provide services directly or indirectly to any insured, regardless of where the services are performed or where the "bodily injury" occurs, including, but not limited to a "leased worker", a "temporary worker", a "volunteer worker", a statutory employee, a casual worker, a seasonal worker, a contractor, a subcontractor, an independent contractor, and any person or persons hired by, loaned to, or contracted by any insured or any insured's contractor, subcontractor, or independent contractor.

(Id.).  Fourth, the Policy excludes "bodily injury" arising out of "the rendering or failure to render any professional services by you or on your behalf."  (Id. at 66).  "Professional services" include "[s]upervisory, inspection, [or] quality control" services.  (Id.).  Fifth, the Policy excludes "bodily injury" arising out of "work performed by any contractors or subcontractors unless such work is being performed specifically and solely for you."  (Id. at 67).  Finally, regarding punitive and exemplary damages, the Policy provides:

> This insurance does not apply to a claim of indemnification for punitive or exemplary damages.  If a "suit" shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense for such action.  We shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

(Id. at 41).

    Nautilus filed its Complaint on April 29, 2010, seeking a declaration that Nautilus does not have a duty under the Policy to indemnify or defend Triple C regarding Teixeira's claims.  On June 2, 2010, Nautilus filed proof that it served Triple C with process.  The proof of service includes a sworn statement by Ceclia Obie, declaring that she personally served the Summons and Complaint on Charles Howard as managing agent for Triple C at 408 West Shore Road, Brigantine, New Jersey on May 25, 2010. [2]  On June 18, 2010, Nautilus filed a second proof of service, which declared that Ms. Obie again served Mr. Howard at the same address on June 17,

---

[2] The Policy lists the insured as "Triple C Construction Inc. c/o Charles Howard."  (Ex. F to Cosgrove Aff., at 1).

2010.  Triple C did not answer or otherwise respond to Nautilus' Complaint.  On July 9, 2010, Nautilus requested that the clerk enter default against Triple C pursuant to Rule 55(a).  The clerk entered default the same day.

Nautilus now moves for default judgment.  Nautilus seeks a declaration that it does not have a duty under the Policy to defend or indemnify Triple C regarding Teixeira's negligence claim.  Nautilus does not seek any money damages.

## II.   JURISDICTION

"Before entering a default judgment against a party that has not filed responsive pleadings, 'the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'"  Bank of Am., N .A. v. Hewitt, No. 07-4536, 2008 U.S. Dist. LEXIS 90719, at *5 (D.N.J. Nov. 7, 2008) (quoting Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)).

Here, the Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the case involves citizens of different states and the amount in controversy exceeds $75,000.00.[3]  Nautilus is an Arizona corporation with its principal place of business in Arizona.  Triple C is a New Jersey corporation with its principal place of business in New Jersey.  Thus, the parties are completely diverse.  Regarding the jurisdictional amount, Nautilus seeks a declaration that it is not required to indemnify Triple C for Teixeira's unspecified amounts of compensatory and punitive damages.  In order to satisfy the jurisdictional amount, claims for punitive damages may be aggregated with claims for compensatory damages unless the former are "patently frivolous

---

[3] Although Nautilus seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Act does not confer subject-matter jurisdiction.  A court may not issue a declaratory judgment under the Act if it does not have an independent basis for exercising subject-matter jurisdiction over the dispute.  See Simi Inv. Co. v. Harris County, 236 F.3d 240, 247 (5th Cir. 2000) ("Declaratory Judgment Act claims, without another basis for jurisdiction, cannot support the district court's jurisdiction."); Lawson v. Callahan, 111 F.3d 403, 405 (5th Cir. Tex. 1997) ("[I]t is well settled that this section does not confer subject matter jurisdiction on a federal court where none otherwise exists.").  Thus, the Court's subject-matter jurisdiction over this matter is based on 28 U.S.C. § 1332.

and without foundation." Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004) (quoting Gray v. Occidental Life Ins. Co., 387 F.2d 935, 936 (3d Cir. 1968)). "Punitive damage claims are per se 'patently frivolous and without foundation' if they are unavailable as a matter of state substantive law." Id. The Third Circuit has held that a nonfrivolous request for an unspecified amount of punitive damages "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." Id. at 355-57 (finding that the jurisdictional amount was satisfied even though actual damages totaled approximately $50,000 because a viable claim for punitive damages was sufficient to establish jurisdictional minimum).

Here, there is no bar to recovery of the jurisdictional amount. Under New Jersey substantive law,[4] an injured plaintiff may recover punitive damages if the defendant committed "a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences." Smith v. Whitaker, 734 A.2d 243, 254 (N.J. 1999). New Jersey has capped punitive damages at five times a defendant's compensatory liability or $350,000.00, whichever is greater. N.J. Stat. Ann. 2A:15-5.14(b). Thus, even though Teixeira's damages are not specified, this Court has subject matter jurisdiction because "it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum."[5] Golden, 382 F.3d at 355-57.

The Court has personal jurisdiction over Triple C because Triple C is a New Jersey corporation with its principal place of business in New Jersey. See Consolidated R. Corp. v.

---

[4] Teixeira's claims are based on New Jersey law.

[5] Jurisdiction is proper in this matter even though the Policy excludes claims for punitive damages. Nautilus seeks a declaration that it is not liable for any of Teixeira's claimed damaged, including his asserted punitive damages. As discussed below, Nautilus' claim for a declaratory judgment is not frivolous. Thus, the amount in controversy in this action exceeds the jurisdictional minimum.

6

Triangle Bldg. Supplies & Lumber, Co., No. 89-2346, 1989 U.S. Dist. LEXIS 11756, at *6-7 (D.N.J. Sept. 5, 1989) (holding that a corporate defendant was "unquestionably" subject to jurisdiction in Pennsylvania because "Pennsylvania is its state of incorporation and the corporation's principal place of business"); see also Int'l Shoe Co. v. Wash., 326 U.S. 310, 317 (1945).  Thus, this Court has both subject-matter and personal jurisdiction over the issues and parties in this case.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a properly served defendant who fails to file a timely response.  See Anchorage Assoc. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990).  The entry of a default judgment is largely a matter of judicial discretion.  Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).  However, before entering default judgment, the Court must conduct a three-part analysis.

First, in cases such as this one that involve a defendant's failure to respond to the complaint, the Court must find that the plaintiff properly served the defendant and that the defendant failed to respond.  See Fed. R. Civ. P. 55(a) (stating that default is appropriate if the defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise"); see also Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 78-84 (8th Cir. 1998) (holding that entry of default under Rule 55(a) must precede entry of default judgment).

Second, the Court must ascertain whether "the unchallenged facts constitute a legitimate cause of action."  DirecTV, Inc. v. Asher, No. 03-1969, 2006 U.S. Dist. LEXIS 14027, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)); DirecTV, Inc. v. DeCroce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004)).

7

Default judgment is permissible only if the plaintiff's factual allegations establish a right to the requested relief.  See Berman v. Nationsbank of Del., No. 97-6445, 1998 U.S. Dist. LEXIS 2221, at *1 (E.D. Pa Mar. 2, 1998).  Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Asher, 2006 U.S. Dist. LEXIS 14027, at *1.

Third, even if default judgment is permissible, the court weighs the following three factors to determine whether default judgment is appropriate:  (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a meritorious defense, and (3) whether the defendant's delay is due to culpable conduct.  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).  "In weighing these factors, [the] the district court[] must remain mindful that, like dismissal with prejudice, default is a sanction of last resort."  GP Acoustics, Inc. v. Brandnamez, LLC, No. 10-539, 2010 U.S. Dist. LEXIS 84244, at *2 (D.N.J. Aug. 17, 2010).

### IV.   ANALYSIS

#### A.  Entry of Default

The clerk properly entered default under Rule 55(a).  Nautilus served Triple C and Triple C failed to respond.  Nautilus personally served Triple C's agent, Charles Howard, with the Summons and Complaint twice within 120 days after filing the Complaint with the Court.  See Fed R. Civ. P. 4(m) (a plaintiff must serve the summons and complaint within 120 days from filing).  Triple C did not respond to the Complaint within twenty-one days after service.  See Fed. R. Civ. P. 12(a) (defendant must respond within twenty-one days of service).  Thus, Triple

C received notice of the claims against it and was afforded a fair opportunity to respond, but it did not do so.

### B. Plaintiff's Allegations

Nautilus properly states a claim for the requested declaratory judgment. Nautilus seeks a declaration of its rights under the Policy regarding Teixeira's claims against Triple C. This Court has the authority to issue a declaratory judgment regarding parties' contractual rights. See 28 U.S.C. § 2201(a); New York Life Ins. Co. v. Johnson, 923 F.2d 279, 284 (3d Cir. 1991) (holding that declaratory judgment was proper regarding enforceability of insurance policy); Transamerica Ins. Co. v. Keown, 451 F. Supp. 397, 399 (D.N.J. 1978) (deciding a request for declaratory judgment regarding the parties' rights and liabilities under an insurance policy). Thus, the Court may enter default judgment against Triple C if Nautilus' allegations establish that it is not liable under the Policy to indemnify or defend Triple C regarding Teixeira's claims.

Under New Jersey law,[6] when interpreting a commercial insurance policy, the Court must "first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. New Jersey Mfrs. Ins. Co., 952 A.2d 1077, 1089 (N.J. 2008) (quoting Zacarias v. Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001)). Courts should "interpret the policy as written and avoid writing a better insurance policy than the one purchased." President v. Jenkins, 853 A.2d 247, 254 (N.J. 2004). If a policy's terms are unambiguous, the Court must give them their ordinary meaning. Id.

Here, the Policy unequivocally excludes Teixeira's claims against Triple C. The Policy expressly excludes "bodily injury" to an "employee" arising "out of and in the course of employment" by Triple C. The Policy defines "employee" to include "any person or persons

---

[6] Because this is a diversity action, and because the Policy does not contain a choice of law provision, the Court applies New Jersey substantive law. See Coney v. Homesite Ins. Co., No. 08-6151, 2010 U.S. Dist. LEXIS 73581, at *10 n.4 (D.N.J. July 15, 2010) (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)).

who provide services directly or indirectly to any insured . . . and any person or persons hired by, loaned to, or contracted by any insured or any insured's contractor, subcontractor, or independent contractor." Those plain terms exclude Teixeira's claim against Triple C. Teixeira claims that he was injured while "working for 3 Brothers Construction." 3 Brothers Construction was working on the site because Triple C had contracted with 3 Brothers Construction. Thus, under the Policy, Teixeira is an "employee" of Triple C. As such, Nautilus is not obligated under the Policy to indemnify or defend Triple C regarding Teixeira's negligence claim. See Nautilus Ins. Co. v. K. Smith Builders, Ltd., No. 09-509, 2010 U.S. Dist. LEXIS 61907, *5-6 (D. Haw. June 22, 2010) (holding that substantially similar exclusion in an insurance contract applied to a worker injured at the insured's worksite even though the worker was employed by a vendor with no contract with the insured).[7]

### C. Factors Warranting Entry of Default Judgment

The above analysis does not end the Court's inquiry. Even where default judgment is permissible, the Court must consider three factors to determine whether default judgment is appropriate: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a meritorious defense, and (3) whether the defendant's delay is due to culpable conduct. Chamberlain, 210 F.3d at 164. The Court finds that default judgment is appropriate in this case.

First, Nautilus is prejudiced by Triple C's failure to respond to Nautilus' Complaint. Nautilus has assumed responsibility under a reservation of rights for defending Triple C against Teixeira's claims. In this action, Nautilus contests its obligation to defend Triple C and seeks a declaration to that effect. By refusing to answer Nautilus' Complaint, Triple C stands to evade adjudication of Nautilus' obligations under the Policy and continue to enjoy a defense funded by

---

[7] Because the Court holds that the employee-exclusion applies to Teixeira's claims, the Court does not address Nautilus' other exclusion arguments.

Nautilus. Nautilus will therefore be harmed if the Court does not enter default judgment. Second, neither the pleadings nor the Policy suggest that Triple C has a meritorious defense. The Policy expressly excludes injuries to employees, and Teixeira falls within the Policy's definition of employee. See GP Acoustics, Inc. v. Brandnamez, LLC, No. 10-539, 2010 U.S. Dist. LEXIS 84244, at *10 (D.N.J. Aug. 17, 2010) (noting that a "[d]efendant's failure to answer makes it practically impossible for the Court to determine whether [the defendant has] a meritorious defense") (internal quotation marks and citations omitted). Third, the record does not suggest any good faith justification for Triple C's failure to respond. Triple C is therefore "presumed culpable" because it "failed to answer, move, or otherwise respond." Slover v. Live Universe, Inc., No. 08-2645, 2009 U.S. Dist. LEXIS 17919, at *6 (D.N.J. Mar. 9, 2009). It is therefore appropriate for the Court to enter default judgment against Triple C.

## V. CONCLUSION

For the reasons discussed above, the Court grants Nautilus' motion for default judgment. The Court will enter an Order declaring that Nautilus is not obligated under the Policy to indemnify or defend Triple C regarding Teixeira's negligence claim.


Dated: 1/6/11  /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge